# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JONATHAN BLACK, Petitioner,** | **Civil Action No. 16-9171 (MCA)** |
| **v.** | |
| **PATRICK NOGAN, et al.,** | **OPINION** |
| **Respondents.** | |

This matter has been opened to the Court by Petitioner Jonathan Black's ("Petitioner," "defendant," or "Black") filing of a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Having reviewed the Amended Petition, Respondent's Answer, Petitioner's Reply Brief, and the relevant record, the Court denies the Petition for the reasons stated in this Opinion, and also denies Petitioner's request for a hearing and a certificate of appealability ("COA").

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A jury found Black guilty of second-degree aggravated assault, N.J.S.A. 2C:12–1(b)(1); first-degree armed robbery, N.J.S.A. 2C:15–1; second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39–4(a); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39–5(b) in connection with his shooting of a gas station attendant in the course of a robbery. The trial judge sentenced defendant to an aggregate term of sixteen years with an eighty-five percent parole disqualifier pursuant to the No Early Release Act ("NERA"), N.J.S.A. 2C:43–7.2.

Defendant appealed his convictions and the Appellate Division affirmed the convictions but remanded for resentencing. *See State v. Black*, 2009 WL 348548 (N.J. Super. App. Div. Feb.

13, 2009) (Black I).  The Supreme Court denied petition for certification.  *State v. Black*, 199 N.J. 132 (2009).

After the judge resentenced Petitioner to the original term following remand, *see* 11T, Petitioner appealed the sentence, and the Appellate Division affirmed by order dated December 16, 2010.[1]  *See* Petitioner's Exhibit A, *State v. Black* (Black II), A–6136–08 (App. Div. Dec. 16, 2010).

On July 10, 2009, Petitioner filed a petition for postconviction relief ("PCR").  *See* Ra5.  On December 16, 2013, the PCR court denied Petitioner's PCR without an evidentiary hearing.  Ra8.  Petitioner appealed, and the Appellate Division affirmed the denial of the PCR on May 19, 2016.  *See State v. Black*, No. A-3608-13T3, 2016 WL 2903612, at *4 (N.J. Super. App. Div. May 19, 2016).  On October 14, 2016, the New Jersey Supreme Court denied certification.  *State v. Black*, 228 N.J. 50 (2016).

Petitioner submitted his original habeas petition for filing on December 2, 2016.  *See* ECF No. 1.  Petitioner subsequently submitted an Amended Petition on September 13, 2017.  ECF No. 4.  Respondents submitted their Answer on March 13, 2020.  ECF No. 13.  Petitioner submitted his Reply Brief on June 19, 2020.[2]  ECF Nos. 15, 16.

## II.      STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

---

[1] Respondents state in their Answer that Petitioner did not appeal his resentencing.  Petitioner contends that he appealed the resentencing, and has provided the Appellate Division's Order as Exhibit A to his Reply Brief.  The Appellate Division's decision affirming the denial of his PCR likewise indicates that Petitioner appealed his resentencing, *See State v. Black*, No. A-3608-13T3, 2016 WL 2903612, at *1 (N.J. Super. App. Div. May 19, 2016).

[2] Petitioner resubmitted his Reply Brief on June 26, 2020.  ECF No. 16.

2254(a).  Petitioner has the burden of establishing each claim in the petition.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996), 28 U.S.C. § 2244, federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts.  *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits,[3] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable

---

[3] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," at of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d) (1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A petition for a writ of habeas corpus "shall not be granted unless ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1); *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). This Court may, however, deny petitioner's unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### III.  <u>DISCUSSION</u>

#### a.  Ground One—Fourth Amendment Illegal Search and Seizure

In Ground One, Petitioner argues that his Fourth Amendment Rights were violated after an illegal search and seizure. Petitioner was apprehended following another armed robbery of a Foot Locker store and confessed to the earlier crime but repudiated his confession at trial. *See Black*, 2009 WL 348548 at *1. In his confession, defendant admitted to participation in armed robberies at a 7–Eleven, a Quick Chek, the Exxon gas station, a Foot Locker, a Chinese restaurant, and a Kids R Us and that he and his accomplices were contemplating another robbery.[4] *Id.* at *3, n.1.

On direct appeal, the Appellate Division summarized the facts surrounding Petitioner's Fourth Amendment claim and rejected it as follows:

> Prior to trial for the gas station armed robbery, defendant challenged the admissibility of his confession, arguing that it should be suppressed as the fruit of an illegal search and seizure. A hearing occurred, at which evidence was presented, which

---

[4] Petitioner was also separately convicted of the armed robberies of the Quick Chek convenience store and the 7–Eleven store ("the convenience store robberies"), which occurred thirty minutes apart and six days prior to the Foot Locker robbery. *See State v. Black*, Nos. 04–10–01268, 04–10–01269, 2009 WL 4981192, at *1 (N.J. Super. App. Div. Dec. 24, 2009). In connection with the convenience store robberies, the trial court imposed two consecutive fourteen-year terms subject to an eighty-five percent parole disqualifier pursuant to the NERA, N.J.S.A. 2C:43–7.2. *See id.*

established that, during the evening of April 26, 2004, a Foot Locker store located on Morris Avenue in Union was robbed. Following the robbery, the victims reported that the crime had been committed by four masked and gloved black men, one wearing a black hoodie and one wearing a green camouflage jacket. On the day after the robbery, a customer who had attempted to enter the store while the robbery was in progress, but had been turned away, informed the police that, upon leaving the location, he had seen a 1995 silver Mitsubishi Galant with gray tinted windows, a damaged front fender and a broken right front headlight partially blocking the exit to the parking lot where the Foot Locker was situated.

Shortly after midnight on April 28, a car matching the description given by the customer was sighted by two police officers, Pietro DiGena and his partner, Barry Coleman, driving west on Morris Avenue in the vicinity of the Foot Locker store. They stopped it. Following the stop, the officers ordered the car's occupants to roll down the windows and, while waiting for a back-up unit to arrive, the officers observed the car's passengers to be passing something from the front to the back seat, and then they observed the back seat passengers to be turning as though placing an object or objects behind them. After the arrival of the second police unit, DiGena approached the driver's side of the car, and at that time, he noted that the driver was wearing a black hooded sweatshirt and the occupant of the front passenger seat was wearing a green military jacket. Both items of clothing matched descriptions of clothing worn by the perpetrators of the Foot Locker robbery. Additionally, DiGena observed masks and gloves on the floor of the vehicle. In response to questioning, the car's driver denied passing anything from the front to the back seat while waiting for the police to approach.

The four were ordered to exit the vehicle and to sit on the curb. Thereafter, the police searched the vehicle for weapons, and in the process, moved the rear seat cushion, which was already displaced, revealing a cocked and loaded handgun located in the trunk, which the police viewed through a hole in the partition between the cab and the trunk. Rather than reaching for the gun from the cab of the car, the police opened the trunk to retrieve it, finding two weapons. A subsequent weapons test revealed that one of the guns had been used in the gas station robbery. All four of the vehicle's occupants were arrested and taken separately to headquarters. Although four police vehicles were on the scene for purposes of transport, at the time the search of the car took place, only two vehicles and four officers were present.

Following the hearing, defendant's motion to suppress was denied. In a written opinion, Judge Wertheimer noted that both parties had agreed that the police had lawfully stopped the car containing defendant, his companions, and the guns as the result of the broken headlight. *See Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct . 1391, 59 L. Ed.2d 660 (1979). The judge then found the search of the vehicle to have been justified as a protective search pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968). In finding reasonable suspicion that defendants were armed, the judge relied on the fact that (1) the vehicle had been sighted at the location of an armed robbery; (2) the two front-seat passengers were wearing clothing that matched the descriptions provided by the robbery victims; (3) masks and gloves were seen on the car's floor; (4) the officers observed the front-seat passengers passing something to the back seat; (5) the observed movements were denied by defendants; and (6) the stop occurred after midnight. The judge also found the scope of the search to have been permissible in the circumstances under standards established in *State v. Brown*, 160 N.J. Super. 227, 231–35, 389 A.2d 507 (App. Div.1978). Alternatively, the judge determined that the warrantless search could be justified under the automobile exception to the warrant requirement as articulated in cases such as *State v. Cook*, 163 N.J. 657, 751 A.2d 92. 664–71 (2000), finding probable cause to have been established by "the vehicle's potential link to an armed robbery, the masks and gloves on the floor of the vehicle, and the furtive movements coupled with the denial of such movements." Additionally, the judge ruled that exigent circumstances existed as the result of the ongoing robbery investigation, the police's reasonable belief that the car's occupants were its perpetrators, the mobility of the car, and the danger to the police and others posed by the presence of the weapons.

At trial before a different judge, testimony by Robert Walker, an acquaintance of defendant's who witnessed the gas station incident, established that, on April 12, 2004, while returning to Hillside from a gathering in Newark, Walker stopped for gas, opening the door to request ten dollars worth of fuel. While the door was open, defendant reached across Walker while holding a gun and stated to the gas station attendant, "Give me the damn money or I'll kill you." When the attendant retreated in panic, defendant shot him in the chest and then ordered Walker to drive off. The bullet passed through the attendant's body, exited through his armpit, reentered his arm, and again exited in the area above the elbow. The attendant, although believing that he would die, survived the attack. Both the bullet and casing were recovered, and ballistic tests connected the ammunition with one of the guns

found in the vehicle that defendant was driving on April 28. Defendant, testifying on his own behalf, denied any involvement with the crime and stated that his confession had been manufactured by the police without any involvement on his part except to sign the fraudulently created document. The jury did not accept defendant's story, finding him guilty on all counts of the indictment against him.

II.

On appeal, defendant challenges Judge Wertheimer's ruling that the search of the vehicle on April 28 and the seizure of the weapons found in it was valid. We affirm, substantially for the reasons set forth in the judge's written opinion. In doing so, we agree with the judge that there was no poisoned tree to bear defendant's confession as fruit, and that his confession was admissible. We add only that the United States Supreme Court has recently reaffirmed the validity of *Terry* stop and frisks in the context of a police stop of a vehicle for an insurance-related violation and the subsequent frisk of a passenger, suspected of gang membership, who was removed from the vehicle. *Arizona v. Johnson*, 2009 U.S. Lexis 868, 2009 WL 160434 (January 26, 2009). Although the decision differs factually from the circumstances of the present case, its emphasis on the risk to the police and the public as the result of the potential for a violent encounter stemming, not from the stop itself, but from the fact that evidence of a more serious crime might be uncovered during the stop, has direct relevance here. In the circumstances presented, we find the police's conduct in searching the vehicle driven by defendant, including the area behind the displaced back seat, to have been reasonable and exigency to have been established as the result of the even match between numbers of police present and occupants of the vehicle and the likelihood that guns remained secreted in that vehicle. *Compare, State v. Dunlap*, 185 N.J. 543, 549–51, 888 A.2d 1278 (2006) (finding no exigent circumstances to be present when defendant was vastly outnumbered by responding police, and his vehicle, thought to contain drugs, was parked on a residential street).

*Black*, 2009 WL 348548, at *1–3.

As the record makes clear, Petitioner had the opportunity for a full and fair litigation of

this claim, and he is thus precluded from challenging the warrantless search in his federal habeas

petition.[5]  *See* Ra 13 at 15 to 18.  In *Stone v. Powell*, 428 U.S. 465 (1976), the petitioner argued

in his petition for writ of habeas corpus that evidence introduced at his trial was the result of an

illegal arrest.  *Id.* at 494.  The Supreme Court held that "the Constitution [did] not require that a

state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an

unconstitutional search or seizure was introduced at his trial" where petitioner was "provided an

opportunity for full and fair litigation of [the] Fourth Amendment claim" in the state courts. *Id.* at

482.

    In this case, Petitioner presented his argument to the state courts in a motion to suppress

before the trial court, which was reviewed by the Appellate Division on direct appeal.  Based on

evidence presented at the suppression hearing, the courts found that the officers conducted a

valid protective search pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).  *See* Ra1 at 68; Ra3 at 8 to

---

[5] Petitioner asserts in his Reply Brief that he should be permitted to challenge the warrantless search because his attorney did not call him to testify at the suppression hearing and did not permit him to cross examine witnesses. Petitioner cannot circumvent the *Stone* bar in this manner.  Although Petitioner would not be barred from asserting <u>an ineffective assistance claim</u> regarding his counsel's failure to call him to testify at the suppression hearing—had he raised and exhausted that claim below—his direct claim is still barred by *Stone*.  Moreover, "a convicted defendant may assert a claim that the trial attorney gave ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), by failing to advise the defendant of his or her right to testify."  *United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995) (full citation omitted).  And, if "in furtherance of trial strategy, defense counsel nullifies a defendant's right to testify over the defendant's protest, the defendant clearly has been denied the right to testify." *Id.*  There is no presumption of prejudice in right to testify cases, however, and the defendant must establish that he was prejudiced his attorney's conduct.  *See Palmer v. Hendricks*, 592 F.3d 386, 397, 400 (3d Cir. 2010) (finding that Petitioner's assertion that he wished to testify in support of his claim of self-defense to "tell his side of the story" was insufficient to establish prejudice under *Strickland*).  Here, Plaintiff conclusory claim that his attorney was ineffective for failing to have Petitioner testify at the suppression hearing does not meet either prong of the *Strickland* test.

9.  Having reviewed the relevant record, the Court agrees with Respondents that Petitioner's claim is barred by *Stone*, *supra*.[6]  As such, habeas relief on Ground One is denied.

### b.  Ground Two—Prosecutorial Misconduct

Next, Petitioner argues that he was denied his Fourteenth Amendment due process rights by comments made during the prosecutor's summation.

In summation, Black's defense counsel argued that it was unreasonable to believe that Black would have confessed to participation in the series of armed robberies, including this one, having been informed of his right to remain silent as set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966).  Defense counsel asked the jury to "evaluate the credibility of these detectives." 7T121-16 to 17.  He continued to comment on the credibility and alleged actions of the detectives, at length, stating:

> Members of the jury, again common sense. Somebody is sitting
> there, if you believe the detectives, being read their Miranda rights
> and being told you don't have to make a statement. You don't have
> to tell us anything. You can talk to a lawyer if you don't have one.
> All those are important rights if you don't have one. All those are

---

[6] Notably, when Petitioner challenged the results of the motion to suppress in his habeas petition challenging his convictions for the Quick Chek and 7-Eleven robberies, this Court also concluded that his Fourth Amendment challenge was barred by *Stone*:

> the New Jersey courts provided Petitioner with an adequate forum
> to present his Fourth Amendment Claim. He had a full and fair
> opportunity to litigate it in the state courts. He has failed to
> demonstrate any structural defect in the state courts' review of that
> Claim.... In accordance with *Stone* and its progeny, this Court may
> not consider the Fourth Amendment Claim. *See Gilmore v. Marks*,
> 799 F.2d 51, 57 (3d Cir. 1986); [*Hubbard v. Jeffes*, 653 F.2d 99,
> 103 (3d Cir. 1981)]; *Jones v. Superintendent of Rahway State
> Prison*, 725 F.2d 40, 42 (3d Cir. 1984) (contention that defendant's
> confession and all other evidence admitted at his trial should have
> been suppressed as fruit of illegal arrest was not proper subject for
> consideration by federal habeas corpus court under *Stone*). *See also
> Jones v. Johnson*, 171 F.3d 270 (5th Cir. 1999).

*See* Ra13 at 17.

important rights that the criminal defendant has. And for you to believe these detectives that these young men said I know I have a right to remain silent. I understand that right. Nobody is threatened me or coerced me, yet I'm gonna sit down and give you this lengthy statement that is incriminating me for very serious crimes. It just doesn't make sense. Okay? So there's the common sense half.

7T122-7 to 21.

So the suggestion that it's ridiculous that the detectives could make up a story and give details and then force Mr. Black to sign it, why not? Why couldn't they? It's done everyday. It's done on America's Most Wanted. You see if when you turn the TV on.

7T125-18 to 23.

But the most important thing about those three goes back to what I said in the beginning. Again use your common sense. Do you really believe that three well experienced, well educated detectives in the Union Police Department who admit they know the tools to use to work on people, the tools to use to get them to talk, the tools that were used to turn people against each other didn't use any of that here. Defies all reason and all common sense.

And why do they say that? Why do they get up here and tell you that? If I'm not mistaken, it was Rossi who said it because they know, you know, the State's gonna get up and tell you well we know Mr. Black must be lying because he's facing a lot of time for these charges and we know he doesn't want to go there. That means he must be lying to me. Well apply that same logic to a detective. They know that if they get up and say hey, you know, we didn't do this right, times were mixed up because we forgot to have him sign that form until after they interviewed him or we told him yes, you better tell us what went on or we're going to go get your friend's mother because it's her car. Guns were found in her trunk. Those things when you put them in context really do make a lot of sense.

7T136-17 to 137-16.

Now the State can get up and argue to you everything I say about the confession being coerced maybe it's true but he still did it. But think about it, members of the jury. If you can't believe the police about what they're telling you, if you can't believe what they tell you about how they took the statement, if you can't believe what they're telling you when they tell you they didn't believe Mr. Bennett until he started crying, why can you believe them about everything else?

7T138-5 to 16

Thereafter, in response to defense counsel's closing arguments, the State argued the

following:

> If you were to believe Mr. Black there were threats. They threatened to arrest the owner of the car, Mrs. Ikharo. How bizarre is that. How about arresting maybe his friend Suleiman Ikharo, something that makes more sense. Mrs. Ikharo is the registered owner of a car that she never even drove?

> And how about this. If you were to believe the defense, if you were to sit here and actually believe Jonathan Black's testimony you would have to believe this. You would have to believe, for lack of a better word, fabricated evidence, made it up.

> What do I mean by that? What other word would fit when a guy is sitting in a room, Mr. Black says I'm not giving a statement; doesn't say anything, and the police are creating the statement on their own; statement that Miller would actually read out loud the questions that Miller was typing and read out loud the answers that Miller was putting down for Black who Black says I wasn't even answering any questions. They just gave me the statement at the end to sign. What sense does that make? You would have to actually believe that all three of those detectives fabricated evidence, made up that statement.

7T154-9 to 155-6.

> And by the way, don't you think if the police were gonna fabricate a statement, because that's really what we're talking about make it up, they would have made up a 10 page statement. Why do two pages? Why don't you put lots of details and throw everything you can in; talk about oh, I don't know the layout of the Exxon, how the victim fell when he was shot, how far open the door was, what the lighting was, where the police were. If the police were going to fabricate this statement, don't you think they could have done a better job? But as the detective said, he asked the question, we asked the questions, we put down what his answers were.

7T156-1 to 13.

> What sense does that make that detectives are gonna fabricate a statement would put at the end of the statement I'm sorry for what I did?

7T156-23 to 25.

Petitioner's counsel did not object to the prosecutor's comments in summation.

Petitioner subsequently raised a prosecutorial misconduct argument on direct appeal, and the

Appellate Division rejected this claim as follows:

> Defendant next challenges, as plain error, aspects of the prosecutor's summation that defendant claims exceeded the scope of permissible argument by inferring that the police lacked any motive to lie. We reject his position, finding that the prosecutor's comments were a proper response to defense counsel's closing argument. . . .
>
> In evaluating the prosecutor's closing, we note the absence of any objection at trial, a circumstance that suggests that defense counsel did not regard the prosecutor's arguments as prejudicial at the time. *State v. Josephs*, 174 N.J. 44, 126, 803 A.2d 1074 (2006), *State v. Engel*, 249 N.J. Super. 336, 377, 592 A.2d 572 (App. Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1991). Further, we note that a prosecutors are afforded considerable leeway in summing up, "so long as their comments are reasonably related to the scope of the evidence presented." *State v. Frost*, 158 N.J. 76, 82, 727 A.2d 1 (1999). As a final matter, we note that we have frequently held that a prosecutor may respond to an argument made by defense counsel during closing. *State v. Johnson*, 287 N.J. Super. 247, 266, 670 A.2d 1100 (App. Div.), certif. denied, 144 N.J. 587 (1996); *State v. Hawk*, 327 N.J. Super. 276, 284, 743 A.2d 325 (App. Div.2000); *Engle*, supra, 249 N.J. Super. at 379, 592 A.2d 572. We are also mindful of the principle that "[i]t is as much [a prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *State v. Farrell*, 61 N.J. 99, 105, 293 A.2d 176 (1972) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314, 1321 (1935)). Our review of the record in this matter, in light of these principles, satisfies us that the prosecutor's closing remained within proper bounds in this case, and that it failed to create reversible error. We therefore affirm defendant's conviction.

*Black*, 2009 WL 348548, at *3.

Here, the Appellate Division did not unreasonably apply clearly established federal law

or unreasonably determine the facts in light of the evidence. A habeas claim based on

prosecutorial misconduct should be granted only where when the misconduct "so infected the

trial with unfairness as to make the resulting conviction a denial of due process." *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  A prosecutorial misconduct claim is examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  Likewise, a "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Petitioner cannot meet the high standard for relief on his prosecutorial misconduct claim. Viewed in context, the prosecutor was not vouching for the credibility of the detectives.  Rather, in response to defense counsel's summation challenging the credibility and actions of the police, the prosecutor argued that the facts did not suggest that the police coerced petitioner or fabricated his statement.  In short, defense counsel challenged the credibility of the state's witnesses, and the prosecutor's argument was a permissible response to that challenge.  For these reasons, the Court denies relief on Ground Two.

### c.  Ground Three-Excessive Sentence in Violation of the Eighth Amendment

Next, Petitioner challenges his sentence as being "manifestly excessive," and in violation of his Eighth Amendment Rights against cruel and unusual punishment.  In his Amended Petition, Petitioner appears to contends that the trial court improperly relied on aggravating factors one and two in sentencing him.  *See* Amended Petition at 29-32.  On direct appeal, however, the Appellate Division vacated Petitioner's sentence and remanded the case for resentencing after finding that the trial court improperly found aggravating factors one and two,

under N.J.S.A. 2C:44-1(a)(1) and (b)(2).  In doing so, the court provided the following analysis

of Petitioner's excessive sentence claim:

> In Point III of his brief, defendant attacks his sentence of sixteen years, subject to NERA, claiming that it was excessive, and that the aggravating factors cited to support it were improperly invoked. In that connection the judge relied upon aggravating factors 1 (the nature and circumstances of the offense, arising from the fact that, when the gas station attendant ran in panic, defendant shot him); 2 (the gravity and seriousness of the harm inflicted by a shot that, just by lucky happenstance, failed to cause death); 3 (the risk that defendant would commit another offense); and 9 (the need for deterrence). N.J.S.A. 2C:44–1a(1), (2), (3), and (9). Although the judge found as a mitigating factor defendant's lack of a prior criminal record, N.J .S.A. 2C:44–1b(7), the judge found that the aggravating factors "clearly and convincingly and substantially" outweighed the single mitigating factor, justifying a sentence above the mid-range.
>
> We find the sentencing judge's invocation of aggravating factor 1 to have been mistaken. Defendant, as we have stated, was convicted of second-degree aggravated assault under a provision that required evidence "that he had attempted "to cause serious bodily injury to another, or cause[d] such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly cause[d] such injury." N.J.S.A. 2C:12–1b(1). At sentencing, the second-degree aggravated assault conviction was merged with the first-degree armed robbery conviction, and defendant was sentenced for the robbery. In invoking aggravating factor one as justification for imposing a sixteen-year sentence on that charge, the judge focused on the circumstances under which serious bodily injury to the victim was inflicted—a shooting at close range of a panicked but otherwise unresisting victim. In doing so, the judge characterized a mindset on defendant's part that mirrored an element of the crime of second-degree aggravated assault that had been merged into the robbery conviction. We find that to have been double counting. Similarly, in invoking aggravating factor 2, the judge did little more than describe the serious bodily injury that elevated defendant's assault on the gas station attendant to a second-degree crime. We thus find that factor to have been mistakenly invoked as well. We thus remand for resentencing, expressing no opinion as to whether the sixteen-year term that was imposed was appropriate in the circumstance.
>
> Defendant's conviction is affirmed; his sentence is vacated, and the matter is remanded for resentencing.

*State v. Black*, 2009 WL 348548, at *4. In light of the remand, Petitioner's counsel did not raise this issue in its Petition for Certification filed in the New Jersey Supreme Court on March 2, 2009. *See* Ra4.

On April 3, 2009, Petitioner appeared for resentencing. *See* 11T. The judge weighed the aggravating and mitigating factors and found that aggravating factors three (risk that defendant would commit another offense) and nine (need to deter), outweighed mitigating factor seven (lack of prior criminal record). *See* 11T14-20 to 16-17; 11T17-2 to 7; *see also* N.J.S.A. 2C:44-1(a)(3); N.J.S.A. 2C:44-1(a)(9); N.J.S.A. 2C:44-1(b)(7). The Judge did <u>not</u> rely on factors one and two at resentencing. The trial court then sentenced Petitioner to the original sentence of sixteen years with an eighty-five percent parole disqualifier. Ra6 at 85; 11T17-8 to 10. Petitioner appealed the outcome of the resentencing, which was denied by Order dated December 16, 2020.[7] *See Black*, 2016 WL 2903612, at *1.

Here, Petitioner's excessive sentence claim fails to provide a basis for federal habeas relief. As a general rule, federal courts will not review state sentencing determinations that fall within statutory limits. Here, the sentencing range for a first-degree crime was 10-20 years. *See* 11T16:18-19. Petitioner's sixteen-year sentence for first-degree armed robbery, in violation of N.J.S.A. 2C:15-1, falls withing the range provided by state law, and his arguments relate to the severity of the sentence imposed. As such, his excessive sentence claim is not cognizable on habeas review. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) (when a state "sentence [is] within the limits set by statute, its severity would not be grounds for [habeas] relief"); *Jones v. Superintendent of Rahway State Prison,* 725 F.2d 40, 42-43 (3d Cir. 1984) (challenge to state

---

[7] It is unclear whether Petitioner sought certification. Because Petitioner's excessive sentencing claim fails to state a claim for federal habeas relief, the Court need not resolve the issue of whether Petitioner exhausted this claim.

court's sentencing discretion is not cognizable in federal habeas); *Smith v. Kerestes*, Civ. 08-0061, 2009 WL 1676136, at *16 (E.D. Pa. June 15, 2009) (rejecting petitioner's claim that his state sentence was excessive because "absent a Constitutional violation, a federal court has no power to review a sentence in a habeas corpus proceeding unless it exceeds statutory limits"); *Logmans v. Moore*, No. 02-5622, 2005 WL 1106336, at *19 (D.N.J. Apr. 29, 2005) ("even if this Court was of the opinion that the sentence was excessive ... it is well established that the severity of the defendant's sentence alone constitutes no ground for [habeas] relief").

In his Reply Brief, Petitioner contends that his sentence violates the Eighth Amendment in light of *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments); *see also Graham v. Fla.*, 560 U.S. 48 (2010) (Eighth Amendment categorically prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide).

This claim appears to be unexhausted, but it also fails on the merits.  Here, Petitioner received a sixteen-year sentence for the gas station robbery, not a life sentence without parole, and he also acknowledges in his Reply Brief that he was over eighteen at the time of the gas station robbery.[8]

---

[8] The Court recognizes that Plaintiff is serving additional consecutive sentences for the Quick Chek and Seven-11 robberies, for which he was tried separately, and Petitioner argues that *Miller* should be extended to situations like his.  Federal habeas relief is available only for violations of clearly established law, as established by the Supreme Court of the United States, and Petitioner is unable to show that his sentence violates any clearly established federal law.  Nothing in this Opinion prevents Petitioner from seeking further relief in state court.

Because Petitioner's excessive sentence claim is not cognizable on federal habeas review and his claim regarding *Miller* and/or *Graham* fails on the merits, the Court denies relief on Ground Three.

### d.   Grounds Four, Five, Six, & Seven—Ineffective Assistance of Counsel Claims

Petitioner's remaining claims assert ineffective assistance of trial counsel; such claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which constitutes "clearly established Federal law" for AEDPA purposes. *Williams v. Taylor*, 529 U.S. 362 (2000); *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010).  A habeas petitioner asserting a claim under *Strickland* must establish two elements.

"First, the defendant must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.  Thus, counsel's performance will be deemed deficient only if it "fell below an objective standard of reasonableness." *Id.* at 688.  The question ultimately is "whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

"Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

In Grounds Four and Seven, petitioner contends that he was denied effective assistance of trial counsel for failing to call the victim as a witness.  The Appellate Division provided the following facts as background for this claim:

> In our February 2009 decision on defendant's direct appeal, we summarized the facts put before the jury:

>> [T]estimony by Robert Walker,[9] an acquaintance of defendant's who witnessed the gas station incident, established that, on April 12, 2004, while returning to Hillside from a gathering in Newark, Walker stopped for gas, opening the door to request ten dollars worth of fuel. While the door was open, defendant reached across Walker while holding a gun and stated to the gas station attendant, "Give me the damn money or I'll kill you." When the attendant retreated in panic, defendant shot him in the chest and then ordered Walker to drive off. The bullet passed through the attendant's body, exited through his armpit, reentered his arm, and again exited in the area above the elbow. The attendant, although believing that he would die, survived the attack. Both the bullet and casing were recovered, and ballistic tests connected the ammunition with one of the guns found in the vehicle that defendant was driving on April 28. Defendant, testifying on his own behalf, denied any involvement with the crime and stated that his confession had been manufactured by the police without any involvement on his part except to sign the fraudulently created document. The jury did not accept defendant's story, finding him guilty on all counts of the indictment against him.

> [*Black I, supra*, slip op. at 7.]

> The gas station attendant who was shot was out of the country in India during the trial and was deemed unavailable by the judge without objection by either party.

---

9 "'Walker' is a pseudonym."  *Black*, 2016 WL 2903612, at *1 n.1.

*Black*, 2016 WL 2903612, at *1.

The PCR trial court rejected Petitioner's ineffective assistance of trial counsel claim premised on trial counsel's failure to call the victim as a witness, finding, among other things, that Plaintiff had not presented any support for his claim that the victim's testimony would have been helpful to his defense or that the victim was available to testify.  *See* Ra8 at 1-12.  The Appellate Division agreed and rejected this claim as follows:

> Defendant also speculates that the victim would have failed to identify him and thus the jury would have found him not guilty. Defendant does not present any support for the proposition that the victim's testimony, if defense counsel had been able to procure it, would have been helpful to the defense. Defendant did not provide a certification from the victim to support this claim nor did defendant supply any evidence that the victim would be available to testify at an evidentiary hearing. Both claims are therefore speculative and do not rise to the level of a prima facie claim *meriting an evidentiary hearing.*

*Black*, 2016 WL 2903612, at *3.

The right of an accused to present witnesses in his own defense "is a fundamental element of due process of law."  *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)); *see also State v. Sanchez*, 143 N.J. 273, 290 (1996) ("few rights are more fundamental that that of an accused – to present witnesses in his own defense") (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)); *State v. Garcia*, 195 N.J. 192, 201-02 (2008).  Both the Sixth Amendment to the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution guarantee the accused the right "to have compulsory process for obtaining witnesses in his favor."  That guarantee provides a criminal defendant with nothing less than "a meaningful opportunity to present a complete defense." *State v. Garron*, 177 N.J. 147, 168 (2003).

Here, however, Petitioner has not established that there is a reasonable probability that outcome of his trial would have been different had his trial counsel called the victim to testify, and the ineffective assistance claims fails on the prejudice prong. For this reason, the Appellate Division did not unreasonably apply clearly established law or rely on an unreasonable determination of the facts in rejecting this claim.

In Ground Six, Petitioner argues that he was deprived of a fair trial based on jury charge improprieties given by the trial court. Specifically, Petitioner contends that the trial court erred in providing written definitions of serious bodily injury and significant bodily injury in response to the jury's question and his counsel was deficient for failing to ask the Court to provide additional written and oral charges. The Appellate Division summarized this claim as follows:

> In response to the jury's question seeking the definitions of "serious bodily injury" and "significant bodily injury," the trial judge, upon request by defense counsel, provided the jury with a written copy of the portion of the jury charge containing those definitions, without reading the charge to them. Defendant argues that defense counsel should have asked the judge to furnish the entire jury charge in writing with additional oral instructions, and that defense counsel was ineffective for not making such a request. He also claims that the judge's responses to the jurors seeking information outside of the evidence presented at trial was prejudicial in that, by urging the jury to rely on the evidence presented, the judge failed to discuss that a reasonable doubt could arise from the lack of evidence presented.

*State v. Black*, 2016 WL 2903612, at *2.

The Appellate Division rejected the jury charge claims as follows:

> The trial judge gave a complete version of the instructions and charges orally in accord with the model jury charges. Providing a copy of a part of those charges in writing without reading those portions aloud again was a reasonable judicial response to the jury's request. Defense counsel's decision to join with the prosecutor in requesting this relief is a matter of trial strategy. Strategic decisions that are objectively reasonable are "'within the wide range of reasonable professional assistance' to

> which an accused is entitled," *State v. Arthur*, 184 N.J. 307, 333,
> 877 A.2d 1183 (2005) (quoting *Strickland*, *supra*, 466 U.S. at 689,
> 104 S. Ct. at 2065, 80 L. Ed.2d at 694), and an appellate court
> "will not second-guess defense counsel's trial decisions which rest
> upon strategic or tactical considerations." *State v. Castagna*, 376
> N.J. Super. 323, 360, 870 A.2d 653 (App. Div. 2006), rev'd, on
> other grounds, 187 N.J. 293, 901 A.2d 363 (2006). Defendant
> gives no support for the proposition that, after giving a complete
> charge, when the jury requests definitions already given orally,
> providing a written copy of that portion of the charge without the
> rest is prejudicial. Nor does he provide support for his argument
> that by focusing the jury's attention on the trial evidence the judge
> negated his prior charge that "defendant may be found guilty by
> reason of direct evidence, circumstantial evidence, a combination
> of the two or a lack of evidence if it raises in your mind a
> reasonable doubt as to the defendant's guilt."

*Black*, 2016 WL 2903612, at *3. Here, the Court agrees with the Appellate Division that

Petitioner has not shown either deficient performance by his counsel or prejudice in connection

with his jury charge claims. As such, the Court denies relief on Ground Six.

Finally, in Ground Five, Petitioner argues that <u>appellate counsel</u> was ineffective for

failing to raise the additional claims concerning trial counsel's failure to call the victim to testify

and for failing to challenge the jury charge. The Appellate Division rejected the ineffective

assistance of appellate counsel claims for the same reasons that it rejected his ineffective

assistance of trial counsel claims. *See Black*, 2016 WL 2903612, at *2-4. Because the Appellate

Division did not unreasonably apply *Strickland* in rejecting the ineffective assistance of appellate

counsel claims, the Court denies relief on Ground Five.

**e. Request for a Hearing & Certificate of Appealability**

Because the Amended Petition is without merit, Black's hearing request does not merit

further written discussion and is denied. *See generally Zettlemoyer v. Fulcomer*, 923 F.2d 284,

298 n.2 (3d Cir. 1991). Pursuant to Local Appellate Rule 22.2 of the Rules of the United States

Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is

issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue.  Having denied the claims in the Petition, the Court will also deny a COA.  Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right."  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will deny a COA.

## IV. <u>CONCLUSION</u>

For the reasons explained in this Opinion, the Court denies the Amended Petition, the request for an evidentiary hearing, and also denies a COA.  An appropriate Order follows.

_____
Hon. Madeline Cox Arleo
United States District Judge

DATED: November 29, 2022.